**UNITED STATES of America, Plaintiff,**

v.

**The PREMISES AND REAL PROPERTY AT 614 PORTLAND AVENUE (Formerly Known as 7–9 Fernwood Avenue), City of Rochester, County of Monroe, State of New York, Defendant.**

**No. CIV–87–481T.**

United States District Court, W.D. New York.

Oct. 5, 1987.

U.S. Attorney's Office (Christopher V. Taffe, of counsel, Asst. U.S. Atty.), Rochester, N.Y., for plaintiff.

Culley, Marks, Corbett, Tanenbaum, Reifsteck & Potter (Donald F. Potter, of counsel, Silveri), Levy, Feldman & Licata, P.C. (Walter J. Licata, of counsel, Silvercrest Const. Co.), Harter, Secrest & Emery (Brian V. McAvoy, of counsel, Monroe Sav. Bank), Rochester, N.Y., for defendant.

### DECISION and ORDER

TELESCA, District Judge.

This is a civil, *in rem*, forfeiture proceeding filed by the United States of America against the defendant premises and real property ("Portland Avenue"). Plaintiff filed a verified complaint for forfeiture pursuant to 18 U.S.C. § 1955(d). That section provides that "any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States." The complaint alleges that the defendant premises was used in violation of § 1955 in that five (5) or more persons conducted a gambling business having gross receipts in excess of Two Thousand Dollars ($2,000.00) on a single day and that said gambling business remained in substantially continuous operation for a period in excess of thirty (30) days all of which occurred at 614 Portland Avenue.

The complaint was filed on May 28, 1987. On the same day plaintiff presented the affidavit of F.B.I. Agent Michael Glass to the Honorable David G. Larimer, United States Magistrate for the Western District of New York. Agent Glass' affidavit details 27 occasions, between January 8, 1987 and May 21, 1987 when either Agent Glass or members of the Rochester Police Department entered 614 Portland Avenue and observed gambling activities, particularly card games. The affidavit identifies partic-

ular individuals present and participating in the gambling activities and approximates the amount of money taken by the "house" as a "rake". Based on this affidavit Magistrate Larimer issued a seizure warrant and writ of entry pursuant to 18 U.S.C. § 1955(d). The Portland Avenue property was seized by representatives of the United States Marshal, the Federal Bureau of Investigation and the Rochester Police Department on May 29, 1987.

The complaint identifies Robert J. Silveri as a person having a claim or property interest in 614 Portland Avenue. Since the filing of the complaint two other claimants have claimed an interest in the property: Silvercrest Construction Corporation claims a mechanic's lien in the amount of Thirty-five Thousand Nine Hundred Twenty-five and 30/100 Dollars, ($35,925.30) and Monroe Savings Bank claims a Fifteen Thousand Dollar ($15,000.00) collateral security mortgage.

Claimant Silveri has filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Claimant states a number of grounds in support of his motion, *inter alia*, that § 1955 does not authorize the forfeiture of *real* property, that the statute requires an underlying conviction for violation of 18 U.S.C. § 1955, and that the complaint fails to allege any wrongdoing on the part of claimant Silveri.[1] Claimant Silvercrest Construction Company joins in the motion for judgment on the pleadings, on the single basis that the statute does not provide for the forfeiture of real property.

## DISCUSSION

In considering a Rule 12(c) motion, the court must accept as true all of the well-pleaded facts alleged in the complaint and may not dismiss the action unless the court is convinced that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *George C. Frey Ready-Mix Concrete, Inc. v. Pinehill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977). *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir.1985). Thus, for purposes of this motion, I accept as true the allegations contained in ¶ 4 of the complaint to the effect that the five named individuals willfully and knowingly conducted an illegal gambling business on the defendant premises in violation of New York State Penal Law § 225.05, that said gambling business had a gross revenue of Two Thousand Dollars, ($2,000.00) or more on one or more single days and that the gambling operation was in substantially continuous operation for a period in excess of thirty (30) days. The conclusion to be drawn from these facts, therefore, is that the defendant premises was used in violation of 18 U.S.C. § 1955. At least as applied to the three above stated bases for their motion for judgment on the pleadings, claimants do not dispute this conclusion.[1]

### A. FORFEITURE OF REAL PROPERTY

■ Claimants argue that the forfeiture provisions of § 1955 provide only for the forfeiture of personal property. They base their argument on interpretation of the language in the statute, caselaw interpreting the statute, and legislative history, particularly Congress' treatment of § 1955 as compared to its treatment of other civil and criminal forfeiture statutes.

Title 18 U.S.C. § 1955(d) provides:

Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of

1. Silveri also contends that the complaint fails to comply with the requirements of Admiralty Rule C(2) in that it is not verified. The original complaint as filed in this Court contains verification by Christopher V. Taffe, Assistant United States Attorney, at p. 4.

Silveri also claims that the Court lacks subject matter jurisdiction because the affidavit of Agent Glass does not provide probable cause for the issuance of the seizure warrant nor does it recite all of the elements contained in 18 U.S.C. § 1955. What the affidavit of Agent Glass states is irrelevant to a judgment on the pleadings. The only relevant document is the complaint.

vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vehicles, vessels, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect to such forfeiture shall apply to the seizure and forfeitures incurred or alleged to have been incurred under the provisions of this section,....

There is a long history in this country of the use of civil forfeiture to enforce the customs and revenue laws. *Calero-Toledo v. Pearson Yacht Leasing Company,* 416 U.S. 663, 94 S.Ct. 2080, 2091–92, 40 L.Ed.2d 452 (1974). In 1970 Congress passed a number of new civil and criminal forfeiture statutes focused on combating organized crime and drug trafficking. Congress did not, however, adopt any new statutes covering the procedure by which these forfeiture actions were to proceed. All of these statutes reference the procedures used in the customs law or Certain Supplemental Rules for Admiralty and Maritime claims. The substantive law of customs and admiralty deal, by their very nature, in personal property and not in real property.

Claimants argue that the statute's reference to the customs rules and the listing of specific types of personal property indicate that Congress intended the statute to provide for the seizure only of personal property. This argument fails to take into account that in those cases where Congress has chosen to specifically include real property in the types of property subject to forfeiture, it has nonetheless chosen to apply the procedural rules of the customs and admiralty law.

Claimants further argue that the use of the phrase "including money" to modify the phrase "any property" supports the conclusion that Congress intended "any property" only to include the types of personal property governed by the customs law. Congress, it is argued, knew how to include a specific type of property when it wanted to do so and chose only to specifically include money and did not chose to include real property. The Government contends that the phrase "including money" was added by Congress to indicate that "any property" means both tangible and intangible forms of property. The legislative history does not give clear direction to adopt either of these interpretations.

The courts that have interpreted this statute have been equally divided on this question. In 1972 Judge Layton of the District of Delaware stated in *DiGiacomo v. The United States,* "if Congress had intended to include real property in the forfeiture provision it could easily have said so." *DiGiacomo v. The United States,* 346 F.Supp. 1009, 1011 (1972). Twelve years later Judge Copenhaver of the Southern District of West Virginia took the opposite view:

> In enacting the Organized Crime Control Act of 1970, Congress set out to erradicate organized crime in the United States by, *inter alia,* "providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Pub.L. 91–452, § 1. To the extent that real property may be "used in violation of" § 1955, it is more logical to conclude, as did the court in *United States v. Godoy, supra,* in interpreting *RICO* § 1963, that if Congress did not want § 1955 to apply to particular kinds of property, it would have specifically excluded them.

*United States v. Various Denominations of Currency and Coin,* 628 F.Supp. 4, 6 (S.D.W.Va.1984).

There does not appear to be any reported cases from this Circuit, nor Court of Appeals cases from any circuit, which addressed this particular question.[2]

Section 1955 was passed as a part of the Organized Crime Control Act of 1970, Pub. L. 91–452. That same Act included the Racketeer Influenced and Corrupt Organizations (RICO) statutes, 18 U.S.C. § 1961

---

2. The one other reported case addressing this issue is a short decision which simply poses the question and follows *DiGiacomo. United States v. Building and Property Known as 123–125 East 12th Street, Erie, Pennsylvania,* 527 F.Supp. 1167 (W.D.Pa.1981).

*et seq.* The RICO statute contains a criminal forfeiture section, 18 U.S.C. § 1963, which provides for the forfeiture of "any interest in ... property ... of any kind...." Also included in the Act was the Continuing Criminal Enterprise (CCE) statute which at 21 U.S.C. § 848, contains the same forfeiture language as the RICO statute. Claimants acknowledge that both of these statutes, which do not specifically mention real property, have been interpreted by the courts to provide for the seizure of real property. *United States v. Godoy,* 678 F.2d 84 (9th Cir.1982), *cert. denied,* 464 U.S. 959, 104 S.Ct. 390, 78 L.Ed.2d 334 (RICO); *United States v. Tunnell,* 667 F.2d 1182 (5th Cir.1982) (RICO); *United States v. Mannino,* 635 F.2d 110 (2d Cir. 1980) (CCE); *United States v. Grammatikos,* 633 F.2d 1013 (2d Cir.1980) (CCE); *United States v. Smaldone,* 583 F.2d 1129 (10th Cir.1978), *cert. denied,* 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979) (RICO); *United States v. Zang,* 645 F.2d 999 (Temporary Emergency Court of Appeals, 1981), *cert. denied,* 454 U.S. 864, 102 S.Ct. 323, 70 L.Ed.2d 164 (RICO).

The claimants point out that even though these numerous cases had interpreted both RICO and CCE to allow for the forfeiture of real property, Congress still felt it necessary in 1984 to amend both statutes to specifically include provisions for the forfeiture of real property. In contrast, it is argued, Congress was likely aware of the *DiGiacomo* decision holding that § 1955 did not apply to real property and yet Congress did not act, and still has not acted, to amend that section to specifically include real property. Therefore, by inaction, Congress adopted the *DiGiacomo* interpretation. In opposition, the Government argues that Congress never acted to amend § 1955 because it clearly understood the phrase "any property" to include real property.

The caselaw is sparse and the legislative history on the particular question is silent. Accordingly, the only firm basis on which to make this determination is from the plain language of the statute, *U.S. v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed. 2d 246 (1981), and from the general legislative intent of the Organized Crime Control Act of 1970. I find that "any property" means just that, including personal as well as real property, tangible as well as intangible property. This conclusion is easily supported by the general intent of the statute, particularly as applied to the facts of this case. The preamble of the Act states that it is aimed at "syndicated gambling", 1970 U.S. Code Cong. & Ad. News 1073. The remarks of the Senators and Representatives make clear that the aim of the Act was to "strike at the economic roots of organized crime". 116 Cong.Rec. S 602 (1970). Were the statute limited to the seizure of roulette wheels, slot machines, gaming tables, as claimants contend, the intent of Congress would be frustrated in all cases, such as this, where the illegal gambling activities were limited to card games.

### B. UNDERLYING CRIMINAL CONVICTION

■ Claimant Silveri argues that before any forfeiture proceedings can be filed under § 1955(d) there must be a conviction for violation of § 1955(a) and (b). Silveri bases this contention on the fact that subsection (d) is in the statute which defines criminal penalties for violations of the gambling law, and on the statements in *United States v. U.S. Coin and Currency,* 401 U.S. 715, 723, 91 S.Ct. 1041, 1045, 28 L.Ed.2d 434 (1971), that forfeiture statutes which "manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise" may be "civil in form [but] are in their nature criminal" (quoting *Boyd v. United States,* 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886)).

"Traditionally, forfeiture actions have proceeded upon the fiction that inanimate objects themselves can be guilty of wrongdoing." *United States v. U.S. Coin and Currency, supra,* 401 U.S. at 719, 91 S.Ct. at 1044. Forfeiture statutes, whether civil or criminal in nature, are inextricably linked to violations of the law. "The enactment of forfeiture statutes has not abated; contemporary federal and state forfeiture

statutes reach virtually any type of property that might be used in the conduct of a criminal enterprise." *Calero-Toledo v. Pearson Yacht Leasing Company, supra,* 416 U.S. at 683, 94 S.Ct. at 2092. As the Government correctly notes "criminal forfeitures are part and parcel of a criminal prosecution, if authorized by statute, and are incorporated into the charging instrument. Rules 7(c), 31(e) and 32(b), Fed.R. Crim.P." (Plaintiff's Memorandum at p. 16). By contrast, civil forfeiture proceedings, *in rem,* "stand independent of, and wholly unaffected by any criminal proceedings *in personam." The Palmyra,* 25 U.S. (12 Wheat) 1, 15, 6 L.Ed. 531 (1827); *see also, Calero-Toledo, supra,* 416 U.S. at 684, 94 S.Ct. at 2092.

In *United States v. U.S. Coin and Currency, supra,* the court concluded that the revenue statutes in question, although on their face an *in rem* civil forfeiture proceeding, were in reality a criminal penalty intended to be imposed "only upon those who are significantly involved in a criminal enterprise." *Id.,* 401 U.S. at 722–23, 91 S.Ct. at 1045. Three years later, addressing an argument essentially identical to the one made here, the Supreme Court specifically rejected the notion that *Coin & Currency* had overruled the long history of Supreme Court decisions upholding the validity of civil *in rem* forfeiture proceedings independent of any criminal conviction. *Calero-Toledo, supra,* 416 U.S. at 680, 94 S.Ct. at 2090.

Section 1955 is in the tradition of these civil forfeiture statutes and does not require any underlying criminal, *in personam,* conviction.

### C. INNOCENT OWNER DEFENSE

As indicated, *supra,* civil forfeiture proceedings are *in rem* actions which proceed on the legal fiction that the property itself is guilty of wrongdoing. The proceedings are unrelated to any allegations of wrongdoing on the part of the property owner. Indeed, in this case, neither Robert Silveri nor any of the other claimants is named in the complaint as having participated in the alleged illegal activities. Silveri argues

that the complaint in this action should be dismissed because Congress did not intend in passing § 1955 "to punish and penalize those who were not actively participating in such unlawful activities." (Claimant's Memorandum at p. 15).

The Supreme Court has recognized the harshness of civil forfeiture but has concluded that "the innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense." *Id.* In *Calero—Toledo* the Court went on to say that:

> To the extent that such forfeiture provisions are applied to leasors, bailors, or secured creditors who are innocent of any wrongdoing, *confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property.*

*Id.,* 416 U.S. at 687–88, 94 S.Ct. at 2094. (Emphasis added.)

This harsh rule is mitigated, to some extent, by the fact that claimants may request remission or mitigation of forfeiture either administratively, to the Secretary of the Treasury, pursuant to 19 U.S.C. § 1618, or address such a request to the discretion of this Court in the context of these proceedings. *United States v. One Tintoretto Painting, etc.,* 691 F.2d 603, 608 (2d Cir. 1982).

These are statutory and equitable mechanisms which presume the validity of the forfeiture proceedings and do not provide a basis for a judgment on the pleadings.

### CONCLUSION

For the above stated reasons, the motion for judgment on the pleadings of claimants Silveri and Silvercrest Construction are denied.

SO ORDERED.