**UNITED STATES of America, Plaintiff,**

**v.**

**PREMISES LOCATED AT 207 WEST WASHINGTON STREET, ATHENS ALABAMA, et al., Defendants.**

Civ. A. No. 89–AR–5451–NW.

United States District Court,
N.D. Alabama,
Northwestern Division.

March 12, 1990.

Frank W. Donaldson, James D. Ingram, Office of the U.S. Atty., Birmingham, Ala., for plaintiff.

Louie Lee Sims, Jr., Oliver & Sims, Alexander City, Ala., William K. Hewlett, Hewlett Black & Marks, Tuscumbia, Ala., J. Stephen Salter, Birmingham, Ala., Harvey B. Morris, Morris Smith Siniard Cloud & Fees, P.C., Huntsville, Ala., John E. Higginbotham, Higginbotham & Whitten, Florence, Ala., J. Paul Lowery, Montgomery, Ala., H. Thomas Heflin, Jr., Munsey Ford & Heflin, Tuscumbia, Ala., for defendants and claimants.

Gerald B. Hooper, Muscle Shoals, Ala., pro se.

Betty Jo Hooper, Muscle Shoals, Ala., pro se.

## MEMORANDUM OPINION

ACKER, District Judge.

This is a civil forfeiture proceeding filed by the United States of America on Sep-tember 25, 1989, pursuant to 18 U.S.C. § 1955(d). The complaint described four separate parcels of real property situated within the Northern District of Alabama and alleged to have been used to conduct or to facilitate a gambling business. The initial complaint was verified by the affidavit of Stephan F. Weishaupt, special agent, Federal Bureau of Investigation, based on information which largely, if not entirely, constituted hearsay. Nevertheless, it was sufficient to furnish the basis for an order entered by this court on October 4, 1989, finding the existence of probable cause to believe that the defendant properties "are *subject to* forfeiture." (emphasis supplied). This finding did not purport to constitute a final adjudication of "probable cause." Pursuant to this court's order of October 4, 1989, the properties were thereupon arrested or seized by the government and appropriate notices were then given to the potential claimants to the parcels.

On October 19, 1989, two weeks after entry of the order of October 4, 1989, the United States amended its complaint and altered the legal descriptions of Parcel 3 and Parcel 4. The United States at that time neither sought nor obtained another or an amended order from this court or another or an amended arrest warrant from the Clerk. The amendment of October 19, 1989, was verified only by an Assistant United States Attorney, based totally upon hearsay.

The four parcels and the persons claiming to own them filed answers and claims. *Inter alia,* those answers expressly denied the complaint's averment that the United States had "probable cause" for instituting the forfeiture proceeding. This automatically placed the burden of proving "probable cause" on the United States as to each separate parcel, after which, if the United States is successful in passing the "probable cause" threshold, the burden of proving innocence or lack of knowledge will be upon the various claimants.

On October 27, 1989, this court entered the scheduling order mandated by Rule 16(b), F.R.Civ.P., in all civil cases. *Inter*

*alia,* the said order required that discovery be completed "on or before March 30, 1990." It further required that any party who had any objection to the order must notify the court of the objection or suggested modification within fourteen (14) days. No party filed any objection to or suggested modification of the Rule 16(b) schedule within the said 14–day period, nor has any party moved for a modification since that time.

On January 4, 1990, this court entered an order requiring the United States to show cause by January 19, 1990, if it could do so, why the title issue as to each of the four separate parcels should not be tried separately pursuant to the jury demands filed by the several claimants, that is, "after the United States has put on its evidence at a non-jury trial proving the existence of 'probable cause.'" The same order required the United States to show cause on or before January 19, 1990, if it could do so, why it should not release to claimants, Thomas B. Smith and/or Andy Smith, the large sum of cash and securities which the Smiths had claimed the United States seized at the time of the seizure of Parcel 4. Lastly, the same order set the case for a pre-trial conference on January 19, 1990, and set the "probable cause" hearing for March 30, 1990.

On January 18, 1990, the United States moved to continue the pre-trial conference of January 19, 1990, on the ground that the United States anticipated dismissing one or two of the parcels and anticipated consolidating the forfeiture of Parcel 4 "with another forfeiture action against certain monies involving the same claimants in the same gambling business" (ostensibly, the monies previously claimed by the Smiths). This motion of January 18, 1990, did not request a continuance of the "probable cause" hearing of March 30, 1990, and did not seek a stay of the entire proceeding.

On January 18, 1990, the United States also responded to this court's show cause order by saying that it had no objection to separate trials for the separate parcels and that it already had, on January 12, 1990, filed a separate forfeiture proceeding in this court against the large sum of cash and securities seized from the Smiths. The said case was referred to by number, CV 90–HM–5018–NW.

Since January 18, 1990, the United States has, despite its voiced anticipation, not sought the consolidation of CV 90–HM–5018–NW with this case. Instead, on February 20, 1990, the United States again moved for a continuance of the pre-trial conference which had already been rescheduled for February 21, 1990. This court granted the motion in view of the contemporaneous dismissal by the United States of Parcel 3, thus narrowing the scope of the issues and eliminating a claimant. That dismissal was based on the allegation that "this forfeiture action against this parcel is no longer in the best interests of the United States."

Meanwhile, on January 22, 1990, the Smiths filed their first request to the United States for production of documents and things. Within the 30–day period for responding or objecting provided by Rule 34(b), F.R.Civ.P., the United States neither filed objections to this discovery request nor any objection nor any motion for a protective order. After the United States failed timely to respond, the Smiths filed a motion to compel on February 22, 1990.

On February 20, 1990, not only did the United States dismiss Parcel 3 and move for a continuance of the pre-trial conference then scheduled for February 21, 1990, but for the first time moved to stay the entire proceeding, including the "probable cause" hearing scheduled for March 30, 1990, on the grounds (1) that "the related criminal investigation into the alleged illegal gambling business that serves as the basis for the present forfeiture action is still ongoing", (2) that "the evidence that serves as probable cause in this action is presently being analyzed at FBI headquarters, Washington, D.C., and is unavailable to plaintiff's counsel at this time" and (3) that "discovery would compromise the ongoing criminal investigation ..." This motion concluded with the allegation that "a stay of the proceedings will not prejudice the interests of any party herein."

On March 2, 1990, both the motion of the United States for a stay and the Smiths' motion to compel were set for oral argument and were heard, with counsel for the United States and counsel for the Smiths participating. Counsel for the claimants to Parcel 1 and Parcel 2 did not argue. It quickly became apparent that at least the Smiths strongly disagree with the United States' allegation that a general continuance "will not prejudice the interests of any party." This court agrees with the Smiths, whose real property (Parcel 4) has been and is now in the possession of the United States.

During oral argument, the court pointedly asked the Assistant United States Attorney when the United States would be ready to proceed to trial if the court should grant a temporary stay, but he was unable to make any commitment as to when the criminal investigation and possible criminal prosecution would be completed. The court also asked the A.U.S.A. if he was aware of any rule by which a civil forfeiture case brought by the United States under 18 U.S.C. § 1955(d) can be continued indefinitely simply at the request or insistence of the United States without its constituting a violation of Rule 16(b), F.R. Civ.P., and without its constituting a violation of the Fifth Amendment's prohibition against the taking of private property without due process of law and/or without the payment of just compensation. He said he was unaware of any statute or court decision which gives the United States such an open-ended right to institute a civil action, seize property, and then to sit on the case indefinitely without either submitting to discovery or facing the moment of truth. In this regard, the court finds it interesting that the current Congress is not just edgy about but highly critical of what it perceives to be the delays in the disposition of civil cases in the federal courts, as manifested by Senate Bill 2027 introduced on January 23, 1990, by Senators Biden, Thurmond, Heflin, Kohl, Specter, Simon and Metzenbaum, entitled "A bill to require certain procedural changes in United States district courts in order to promote the just, speedy and inexpensive determination of civil actions, and for other purposes." This court would certainly not want to add any fuel to this legislative fire by not expeditiously moving a civil case to conclusion.

If the United States were here simply motivated by a sensitivity to a claimant's assertion of the privilege against self-incrimination, the question would be an entirely different one. In this case, the Smiths, with a bit of "daring-do," do not seek a continuance for the purpose of avoiding the possible choice between losing their property and waiving their Fifth Amendment privilege by getting on the witness stand. If the Smiths alone, or if the United States and the Smiths together, were asking this court for a stay of this proceeding, this court would grant it. This court need not repeat the belief it has voiced on other occasions that a civil action cannot be used to force involuntary self-incriminating testimony from a person who is charged or may potentially be charged with a crime. The Fifth Amendment's privilege against self-incrimination would clearly be implicated in such a case. All Fifth Amendment scholars, whether to the "right" or to the "left," would cringe at the thought of a judicially forced confession. *See Campbell v. Gerrans,* 592 F.2d 1054, 1057–58 (9th Cir.1979). But this is not that case. Here, the court is faced with a flat-footed insistence by the Smiths that the United States reveal its evidence bearing on "probable cause" and then put on its proof of "probable cause," as provided by the Rule 16(b) order.

This is not an action for civil forfeiture filed pursuant to the Comprehensive Drug Abuse and Prevention Control Act of 1970, which at 21 U.S.C. § 881(i) provides for a stay "upon motion of the United States and for good cause shown," whatever "good cause" may mean. The conspicuous absence of such a provision in the forfeiture statute here invoked by the United States which relates to gambling makes it unnecessary for this court to find the presence of or the absence of "good cause" for a stay except as the concept "good cause" may always be present. Neither is it necessary to address hypothetically the constitutional-

ity of the granting of a lengthy stay even under 21 U.S.C. § 881(i) if granted over the objection of a property owner whose property has been seized.

The United States has furnished this court with no rule and with no decision which would exempt it from the binding effect of Rule 34(b), F.R.Civ.P., or from the binding effect of a court order entered pursuant to Rule 16(b), F.R.Civ.P. The court itself has looked but has found no authority which would recognize any such exception available to the United States and not available to any other civil litigant.

The Smiths are hereby forewarned that their successful resistance of the stay here requested by the United States will cause them to be put to the proof of their claim (very possibly before the ongoing criminal investigation or possible prosecution has been concluded), that is, in the event the United States succeeds on March 30, 1990, in proving "probable cause" for a forfeiture of Parcel 4. In other words, the Smiths cannot have their cake and eat it too. They have set a course from which they cannot retreat.

Whether or not the Smiths are making a strategy error is not a matter for this court. It is, however, for this court to decide, within reason, how to manage its civil docket, at least unless and until S.2027, *supra*, should become the law.

For the foregoing separate and several reasons, the motion by the United States for a stay of the entire proceeding will be denied, and the "probable cause" hearing will proceed as scheduled in Florence, Alabama, on March 30, 1990, at 9:00 A.M., as to Parcel 4 and the claim of Thomas Ray Smith and Andy Smith. Unless a party insists on an earlier pre-trial conference, there will be no pre-trial conference until 8:00 A.M. on March 30, 1990, one hour before the "probable cause" hearing.

The Smiths' motion to compel will be granted, and the United States will be required to respond fully to the Smiths' discovery requests within seven (7) days.

Insofar as Parcel 1 and Parcel 2 are concerned, the claimants to those parcels shall notify the court in writing within sev-en (7) days whether or not they resist the United States' motion for a stay of the entire proceeding. To the extent they do oppose the motion for a stay, the motion will be denied, and the "probable cause" hearing on March 30, 1990, will include the parcel of any claimant who thus objects to the stay. To the extent any claimant does not express resistance to the proposed stay, or does not respond to the United States' motion for a stay within the said seven (7) days, the motion for a stay will be granted.

Appropriate, separate orders will be entered.

DONE.