UNITED STATES of America, Plaintiff–Appellant,

Manufacturers Hanover Servicing, Inc., Plaintiff–Intervenor,

v.

PREMISES LOCATED AT ROUTE 13, Kilburn Beach, Florence, Alabama, et al., Defendants,

Premises Located at Highway 13/5, Phil Campbell, Alabama; Premises Located at 207 West Washington Street, Athens, Alabama, Defendants–Appellees,

Thomas Ray Smith, Andy Smith, Leland Sharp, Rose Sharp, Claimants–Appellees,

Lyndon Letson, Sandra Letson, Robbie W. Johnson, Colonial Bank, Claimants.

No. 90–7788.

United States Court of Appeals, Eleventh Circuit.

Oct. 31, 1991.

As Amended Nov. 5, 1991.

---

Frank W. Donaldson, U.S. Atty., James D. Ingram, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellant U.S.

William Cater Elliott, Parnell, Crum & Anderson, P.A., Montgomery, Ala., for plaintiff-intervenor Manufacturers Hanover Servicing, Inc.

J. Stephen Salter, Kimberly R. West, Birmingham, Ala., for defendants, claimants-appellees, Land and Smith.

Before JOHNSON and EDMONDSON, Circuit Judges, and DYER, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This appeal involves a civil forfeiture proceeding under 18 U.S.C.A. § 1955(d). The Government, as part of a criminal investigation of alleged gambling activities by the appellees, seized certain real property allegedly used in an illegal gambling operation pursuant to section 1955. The case presents the question of whether the civil forfeiture procedure provided in section 1955 reaches real property. The district court held that it does not, and we now reverse. We also reverse the district court's entry of summary judgment on alternative due process grounds.

## I. STATEMENT OF THE CASE

### A. The Facts

On October 2, 1989, the United States government filed its initial complaint pursuant to 18 U.S.C.A. § 1955(d),[1] seeking the forfeiture of four properties allegedly used for illegal gambling purposes. On the

1. **§ 1955. Prohibition of illegal gambling businesses**

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operations for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States.

All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers, agents, or other persons as may be designated for that purpose by the Attorney General.

18 U.S.C.A. § 1955(a), (b), (d).

same day, the Government filed a motion for an order for an arrest warrant for the four defendant properties ("Parcels"). On October 17, 1989, the Marshal commenced execution of the warrant and notice to interested parties. Leland and Rose Marie Sharpe, Colonial Bank, and Manufacturer's Hanover all filed claims on Parcel 2.[2] Andy and Thomas Ray Smith filed a claim on Parcel 4.[3] The Government eventually voluntarily dismissed its claims against Parcels 1 and 3.

On January 4, 1990, the district court ordered a probable cause hearing for March 30, 1990. On January 22 and January 31, 1990, the appellees filed discovery requests for tapes and transcripts gathered in the criminal investigation. On February 20, 1990, the Government moved to stay the whole proceeding including the probable cause hearing. *United States v. Premises located at 207 W. Washington St.*, 732 F.Supp. 1128, 1130 (N.D.Ala.1990). On February 22, 1990, the Smiths objected to the Government's motion to stay and moved to compel discovery because the Government had not replied to their request for discovery in the time allowed by Fed.R.Civ.P. 34(b). On March 12, 1990, the district court denied the stay and granted the Smiths' motion to compel discovery. *Id.* at 1132. The district court noted, however, that the Smiths would have to comply with legitimate discovery requests by the Government on the merits after the probable cause hearing, which was still scheduled for March 30, 1990. *Id.* at 1131, 1132. Although the court did not grant the Government's motion for a stay, the court implied that if the Smiths did not withdraw their objection to the stay, they might have to waive their possible Fifth Amendment privilege against self-incrimination in order

to comply with the Government's discovery requests. The Smiths withdrew their objection to the stay on March 16, 1990. On March 19, 1990, the district court vacated its order scheduling the probable cause hearing for March 30, 1990, and imposed a stay on the whole proceeding until a claimant moved to remove the stay or until June 29, 1990, whichever came first.

No claimant moved to remove the stay and the June 29, 1990 deadline passed. On July 12, 1990, the Smiths moved for summary judgment on due process and self-incrimination grounds. On July 25, 1990, at a hearing on the Smiths' summary judgment motion, the Government notified the district court that it was ready to proceed with discovery. On July 27, 1990, the Sharpes moved for summary judgment on the same grounds asserted by the Smiths. On September 12, 1990, the district court granted both the Smiths' and the Sharpes' summary judgment motions. *United States v. Premises Located at Highway 13/5*, 747 F.Supp. 641, 652 (N.D.Ala.1990).

### B. *The District Court Decision*

The lower court granted summary judgment to the appellees on two separate grounds. First, the district court held that section 1955(d) did not apply to real property. *Id.* at 644–45. Second, in alternative holdings, the district court held that because the appellees had been deprived of their statutory and constitutional due process rights, *id.* at 645–49, and their privilege against self-incrimination, *id.* at 649–52, the court would immediately restore their property.[4] This appeal followed.

### II. ANALYSIS

We now reverse the district court on both of its proffered grounds for summary

---

**2.** Parcel 2 is the home of appellees Leland and Rose Marie Sharpe. It is subject to a first mortgage held by claimant Manufacturer's Hanover Servicing, Inc. ("Manufacturer's Hanover") and a second mortgage held by claimant Colonial Bank.

**3.** Parcel 4 is a clothing store owned by appellees Andy and Thomas Ray Smith.

**4.** It is unclear whether the district court offered alternative grounds for its holding or whether it

intended for all of the grounds combined to justify its holding. *See id.* at 649 ("In this case, the 'due process' and the 'self-incrimination' provisions of the Fifth Amendment are so interwoven as to be inseparable. They must be examined as a unit."); and *id.* at 652 (The last sentence of the opinion: "For the separate and several reasons discussed above, this Court will pull the United States from its tar baby and will grant claimants' motions for summary judgment.").

judgment. The district court misread section 1955(d). We conclude that 18 U.S.C.A. § 1955(d) does apply to real property. Furthermore, summary judgment on the alternative grounds was improper because genuine issues of material fact existed.

### A. *Applicability of Section 1955(d) to Real Property*

■ Section 1955(d) applies, by its own terms, to "any property." The three other circuits that have considered the issue of whether this language includes real property have concluded that it does. *United States v. On Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289 (7th Cir.1990); *United States v. South Half of Lot 7 & Lot 8, etc.*, 910 F.2d 488 (8th Cir.1990) (en banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 1389, 113 L.Ed.2d 445 (1991); *United States v. Premises and Real Property at 614 Portland Ave.*, 846 F.2d 166 (2d Cir. 1988) (affirming and adopting the reasoning in *United States v. Premises and Real Property at 614 Portland Ave.*, 670 F.Supp. 475 (W.D.N.Y.1987)). We find the reasoning of our fellow circuits persuasive, and therefore join in their conclusion that section 1955 reaches real property.

The plain meaning of the words "any property" necessarily encompasses real property. *See On Leong*, 918 F.2d at 1297; *South Half*, 910 F.2d at 489; *614 Portland Avenue*, 670 F.Supp. at 478. Furthermore, at the time of its enactment, section 1955 was part of the Organized Crime Control Act of 1970 ("OCCA") which also included the RICO and CCE statutes. The civil forfeiture provisions of RICO and CCE contain similar language to that found in § 1955(d). 18 U.S.C.A. § 1963 (1984) (RICO) ("any interest in ... property ... of any kind"); 21 U.S.C.A. § 848 (1981) (CCE) (same). The RICO and CCE provisions have both been interpreted to apply to real property. *See United States v. Zielie*, 734 F.2d 1447, 1458–59 (11th Cir. 1984) (applying § 1963 to real property), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 957,

83 L.Ed.2d 964 (1985); *United States v. Mannino*, 635 F.2d 110, 118 (2d Cir.1980) (applying § 848 to real property). Thus, we conclude that just as the forfeiture provisions enacted contemporaneously with section 1955(d) reach real property, so too does section 1955.

In coming to this conclusion, we are not unaware that Congress amended the RICO and CCE forfeiture provisions in 1984 to expressly include real property, and that Congress did not also amend section 1955(d) to expressly reach real property at that time. This fact, however, does not dissuade us from our initial conclusion that section 1955 reaches real property. The three other circuits that have addressed this issue have uniformly rejected any negative implication from this Congressional failure to act. *On Leong*, 918 F.2d at 1297–98; *South Half*, 910 F.2d at 491; *614 Portland Ave.*, 670 F.Supp. at 478.[5] We agree that the plain meaning of the words "any property" is not subject to an artificial limitation drawn by implication from what Congress failed to say.

For the foregoing reasons, we find that the district court erred in holding that real property is beyond the scope of section 1955. We hold that 18 U.S.C.A. § 1955 applies to real property just as it applies to any other property interest.

### B. *Statutory Procedural Requirements*

Appellees contend that the district court's opinion should be read as granting summary judgment on the basis of the Government's violations of four statutory procedures. These alleged violations of statutory procedures include: (1) failure of the description of Parcel 4 in the amended complaint to specify the county or counties in which the parcel lies; (2) failure to seek an amended order of arrest warrant; (3) failure to serve appellees with the amended complaint; and (4) failure to provide adequate notice by publication.

---

**5.** Interestingly, the 8th Circuit panel opinion in *South Half*, upon which the appellees and the district court rely, also rejects the negative implication theory. *U.S. v. South Half of Lot 7 &*

*Lot 8, Block 14*, 876 F.2d 1362, 1366 (8th Cir. 1989), *rev'd,* 910 F.2d 488 (8th Cir.1990) (en banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 1389, 113 L.Ed.2d 445 (1991).

■ Regarding the first and second alleged violations, neither the appellees nor the district court specified what statute or rules these omissions violated. Moreover, regarding the second alleged violation, the Government asserts that there was no reason to seek another warrant because the property at issue had already been seized. On remand, the appellees must clarify these grounds for relief and clearly establish what statutory commands these alleged acts violated. Otherwise, the lower court should dismiss these grounds.

■ Concerning the third alleged violation, the record shows that the Marshals in fact served the amended complaint on the appellees. This entirely contradicts the district court's finding that there was no evidence that the amended complaint was served. *Highway 13/5*, 747 F.Supp. at 647. Because the discrepancy between the district court's finding and the record before us presents a genuine issue of material fact, we remand this issue to the district court for further development.[6] Fed. R.Civ.P. 56(c).

■ Finally, with regard to the fourth alleged violation, the appellees and district court are apparently both of the opinion that the Government violated Supplemental Rule for Certain Admiralty and Maritime Claims C(4).[7] The Government cannot, however, violate Supplemental Rule C(4) in this instance because the Supplemental Rules do not apply to gambling forfeitures.[8] The customs laws do apply to this case, however, and 19 U.S.C.A. § 1607(a) provides that the Government must publish notice of the seizure and the intent to forfeit for at least three weeks. The record shows a notation in the remarks portion of the Marshals' return indicating that the Marshals arranged for the publication of the notice of the forfeiture in four local newspapers for three weeks. The district court characterized this filing by the U.S. Marshals as "a purported return indicating that [the Marshal] had published notice," and found that the Government had failed to produce any evidence of the actual contents of the notice. *Highway 13/5*, 747 F.Supp. at 647. Although we think it entirely implausible that the Marshals would deliberately falsify a return, it is possible that although the Marshals placed the order for the notice, the newspapers never in fact published the notice. The return establishes that the Marshals arranged for the publication of the notice, but not that the notice was actually published. Thus, there appears to be a genuine issue of material fact as to whether the Government published adequate notice under 19 U.S.C.A. § 1607(a), making this an inappropriate ground for summary judgment.

In sum, it is unclear what statute or rule, if any, was violated based on the facts set forth in the appellees' first two contentions, and the remaining two contentions involve genuine issues of material fact. Consequently, summary judgment was inappropriate on all of the statutory procedure grounds. We therefore remand these issues to the district court for further development.

## C. *Constitutional Due Process*

■ Appellees claim, and the district court found, that the delay between the seizure of the Parcels on or around October 4, 1989 and the summary judgment hearing on September 12, 1990, without an adversarial hearing on probable cause, violated their rights to due process under *United States v. Eight Thousand Eight Hundred and Fifty Dollars*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (hereinafter

---

**6.** The Marshals' verification of service of process appears to us to be sufficient to establish that the amended complaint was served on the appellees. However, at this time we are not prepared to make a factual finding that the appellees were served with the amended complaint.

**7.** This is evidenced by their reliance on *United States v. $38,000 in United States Currency*, 816 F.2d 1538 (11th Cir.1987), which faulted the Government for its insufficient publication notice under Supplemental Rule C(4).

**8.** Both the Supplemental Rules and customs procedures apply to drug forfeitures. 21 U.S.C.A. § 881(b), (d). However, only the customs procedures apply to gambling forfeitures. 18 U.S.C.A. § 1955(d) (1981).

*$8,850* ).[9] This Court's standard of review for the district court's application of *$8,850* appears in *United States v. Wragge*, 893 F.2d 1296 (11th Cir.1990). The application of *Barker*, and hence *$8,850*, is a mixed question of law and fact. This Court reviews the law *de novo* and the facts for clear error. *Id.* at 1298 n. 4.

The Supreme Court, in *$8,850*, provided a balancing test consisting of four factors. No single factor is dispositive for evaluating claims of an unconstitutional denial of property without due process of law. The factors include: (1) "the length of the delay," (2) "the reason the Government assigns to justify the delay," (3) "the claimant's assertion of the right to a judicial hearing," and (4) "whether the claimant has been prejudiced by the delay." *$8,850*, 461 U.S. at 565, 568–69, 103 S.Ct. at 2012, 2014–15.

The *$8,850* Court provided additional guidance for evaluating the first two factors and the fourth factor that is particularly relevant to the present case. Elaborating on the first two factors, the Court noted that "[p]ending criminal proceedings present [weighty] justifications for delay in instituting civil forfeiture proceedings. A prior or contemporaneous civil proceeding could substantially hamper the criminal proceeding[;] however, the pendency of criminal proceedings is only an element to be considered in determining whether delay is unreasonable." *Id.* at 567, 103 S.Ct. at 2013. The Court also observed that "diligent pursuit of ... criminal proceedings" by the Government "indicates strongly that the reasons for its delay ... were substantial." *Id.* at 568, 103 S.Ct. at 2014. Regarding the fourth factor, prejudice from delay, the Court stated that the "primary inquiry is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of

witnesses or other important evidence." *Id.* at 569, 103 S.Ct. at 2014.

■ Applying the first two factors to this case, the delay between the seizure of the property and the district court's grant of summary judgment was related to an ongoing criminal investigation, but lasted over eleven months. The Government points out that on July 25, 1990 (less than ten months post-seizure), it notified the district court that it was ready to proceed with discovery and asserts that it required eight months to prepare all the evidence for the case. The district court, however, summarily found this excuse for the delay both "incredible and inexcusable." *Highway 13/5*, 747 F.Supp. at 649. We do not find that an eleven months' delay constitutes a violation of the due process clause, especially when the proffered reason is an ongoing criminal investigation. Indeed, as we observed earlier, the Supreme Court has specifically noted that ongoing criminal investigations provide a "weighty factor" to be carefully considered when evaluating the Government's reason for delay. *$8,850*, 461 U.S. at 567, 103 S.Ct. at 2013. The district court erred both in unduly relying on the first and second *$8,850* factors and in summarily rejecting the Government's reason for delay. Concerning the third factor, the district court stated that it would have allowed the appellees to remove the stay merely by filing a motion. However, none of the appellees filed a motion for such a hearing. The appellees had only to assert their right to a judicial hearing in order to obtain one. However, this issue may relate, at least in part, to the appellees' claim regarding their Fifth Amendment right against self-incrimination. Nevertheless, we initially believe that this factor weighs against a finding that the appellees' due process rights were violated. On remand this issue should be considered in tandem with the appellees'

---

9. The Government does not dispute that *$8,850* provides the applicable legal principles for resolving appellees' due process claims, even though *$8,850* dealt with the delay between seizure and the filing of a forfeiture action, rather than with the presentation of evidence in an already-filed forfeiture action. The *$8,850*

Court held that the factors in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which provided the test for establishing a violation of the right to a speedy trial, also apply to forfeiture cases. 461 U.S. at 564, 103 S.Ct. at 2012.

self-incrimination claim. Finally, regarding the fourth consideration, prejudice from delay, the district court did not address the issue of prejudice to appellees with regard to their ability to present their case in the probable cause hearing. Rather, the lower court found that "[i]t goes without saying that the titles to both parcels have been unmarketable since October 2, 1989," *id.* at 644, and that "it is commonly understood to be impossible, as a practical matter, to buy merchandise to prepare for the various fashion seasons while a sword of Damocles hangs over the business."[10] *Id.* at 649 (referring to the Smiths' clothing store on Parcel 4). The lack of marketability and the inability to buy inventory do not constitute prejudice in the manner proscribed by *$8,850.*[11] This issue is therefore in need of further development on remand.

On this record, there are genuine issues regarding the material facts of the Government's proffered reason for the delay, the appellees' assertion of their rights, and prejudice to the claimants. The resolution of all four factors is contingent on information the court simply does not have before it. Absent the additional facts, we cannot determine which of these factors, if any, redound to the favor of appellees. We therefore reverse the district court's entry of summary judgment on due process grounds and remand this issue to the district court.

### D. *Self–Incrimination*

The district court held, and appellees argue, that the appellees' rights against self-incrimination mandated summary judgment, relying principally on *Pervis v. State Farm Fire & Casualty Co.*, 901 F.2d 944 (11th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990), and *United States v. U.S. Currency*, 626 F.2d 11 (6th Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980).

The general rule provides "that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *United States v. A Single Family Residence & Real Property*, 803 F.2d 625, 629 n. 4 (11th Cir.1986). However, this Court recently recognized an exception to this general rule: the Fifth Amendment is violated when a person, who is a defendant in both a civil and a criminal case, is forced to choose between waiving his privilege against self-incrimination or losing the civil case on summary judgment. *Pervis*, 901 F.2d at 946–47. However, to trigger this rule, the invocation of the privilege must result in an adverse judgment, not merely the loss of "his most effective defense." *Id.* Stated plainly, the rule applies when the invocation of the privilege would result in "automatic entry of summary judgment." *Id.* at 949. This rule probably applies to Andy Smith as of his indictment on August 30, 1990, and might apply, by extension, to the other appellees who are not yet criminal defendants but who still might invoke the Fifth Amendment privilege. However, it is unclear whether the rule is satisfied in the present case because this Court cannot tell from the record before it whether the appellees' invocation of the privilege would in fact cause an adverse judgment in the forfeiture proceedings. If the appellees could show that their invocation of the privilege would in fact cause an adverse judgment, *i.e.*, cause them to be unable to rebut probable cause, then they have made out a violation of their Fifth Amendment rights under *Pervis*. However, the present record is not sufficient for us to make this determination. We do not yet know if the

---

**10.** The lower court also observed that the appellees continued to have use of the seized parcels. *Highway 13/5*, 747 F.Supp. at 649. The Smiths, however, unlike the Sharpes, had no agreement with the Government which allowed them to remain in possession. Although the district court's observation regarding the personal difficulties created by the seizure on the appellees may well be true (and we too sympathize with

persons whose property is under a seizure order for a prolonged period of time without a final disposition), this kind of "prejudice" simply is not relevant to the prejudice portion of the balancing test set forth in *$8,850.*

**11.** *I.e.*, causing prejudice from the loss of witnesses or evidence.

Government will be able to establish probable cause for the seizure of both the defendant properties, much less whether the appellees could rebut the Government's attempt to establish probable cause without waiving their right against self-incrimination.

Thus, this issue is not ripe for summary judgment because there is a genuine issue as to the material fact of the appellees' inability to rebut probable cause without their own testimony. We therefore reverse the district court's grant of summary judgment on this issue and remand this question to the district court.

## III. CONCLUSION

The decision of the district court granting summary judgment to appellees is REVERSED and the case is REMANDED for additional proceedings consistent with this opinion.