SHELL OIL COMPANY, Plaintiff,

v.

ALTINA ASSOCIATES, INC., Defendant.

SHELL OIL COMPANY, Plaintiff,

v.

P.J. & A.R. ALTMAN, INC., Defendant.

Nos. 94–886–CIV–T–25(C),
94–887–CIV–T–25(C).

United States District Court,
M.D. Florida,
Tampa Division.

July 19, 1994.

**61.** *Walters v. Hiab Hydraulics,* 356 F.Supp. 1000, 1002 (M.D.Pa.1973), *quoting* Restatement 2d of Torts 402A(2)(a).

James B. Murphy, Jr., Shackelford, Farrior, Stallings & Evans, Tampa, FL, Local Counsel, James L. Michalak, Ann Spiegel, Houston, TX, pro hac vice, for plaintiff.

Lee W. Atkinson, Robert L. Barnes, Clearwater, FL, for defendants.

## ORDER GRANTING PRELIMINARY INJUNCTION

ADAMS, District Judge.

THIS CAUSE is before the Court upon consideration of Plaintiff's Motion for Preliminary Injunction (Dkt–2), Motion to Stay or Abate Proceedings (Dkt–10), supporting memorandum of law, responses, the Complaint and the exhibits thereto, and the evidence and argument at the hearing before this Court on July 6, 1994.

*Jurisdiction*

Plaintiff brings this action pursuant to 28 U.S.C. § 1331, under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801, et seq., 28 U.S.C. § 1332, diversity of citizenship and alleges that the matter in controversy exceeds $50,000, and 28 U.S.C. § 1337. The defendants challenge jurisdiction under PMPA and argue that section 2805 authorizes equitable relief for franchisees and not franchisors. Section 2805, the enforcement provision of the PMPA, states:

"(a). If a franchisor fails to comply with the requirements of sections 2802 or 2803 of this Title, the franchisee may maintain a civil action against such franchisor."

There is no similar provision authorizing similar action by franchisors.

■ It is clear that the PMPA was designed to protect franchisees from arbitrary and discriminatory termination or nonrenew-

al of franchises by the franchisors. *Marathon Petroleum Co. v. Pendleton*, 689 F.Supp. 739, 741 (N.D.Ohio 1988), *aff'd*, 889 F.2d 1509 (6th Cir.1989) (citations omitted). The PMPA was enacted by Congress to govern exclusively the area of termination and non-renewal of retail service station franchise relationships.[1] In accord, Congress provided,

"Legislation in this subject area [also] requires recognition of the legitimate needs of a franchisor to be able to terminate a franchise or not renew a franchise relationship based upon certain actions of the franchisee, including certain failures to comply with contractual obligations or upon certain changes in circumstances."

*Atlantic Richfield Co. v. Razumic*, Bus. Franch.Guide ¶ 8368, p. 15,297 (W.D.Pa.1985) (declaratory judgment remedy available to franchisees under 15 U.S.C. § 2805, is also available to franchisor). Although, the PMPA does not specifically authorize this action by franchisor, the procedural requirements for franchise termination are set forth in the PMPA. In this area, the PMPA preempts all state law. *In re Herbert*, 806 F.2d 889 (9th Cir.1986). *See, Amoco Oil Co. v. Edward W. Beyer*, Bus.Franch.Guide ¶ 8062, p. 13,967 (N.D.Ill.1983) (citing, *Exxon Corp. v. Miro*, 555 F.Supp. 234, 236 (C.D.Cal. 1983) (where PMPA preempts all state laws, and controls the termination of franchises and the renewal of franchise relationships federal question jurisdiction invoked on behalf of franchisor). Section 2806(a) of the PMPA, by its terms, preempts any state statutory or common law, in the area of termination or non-renewal that is different than the PMPA. *Exxon Corp. v. Fernando Gonzalez and Tremont Service Station, Inc.*, Bus.Franch.Guide ¶ 8440, p. 15,701 (S.D.Fl. 1985). As a result of preemption, plaintiff is precluded from seeking eviction or termination in state court, as defendants argued.

■ Despite PMPA's failure to specifically authorize equitable relief on behalf of franchisors, courts have consistently found that federal courts have jurisdiction to re-

---

1. S.Rep. No. 95–731, 95th Cong., 2d Sess. 19, reprinted in 1978 U.S.Code Cong. & Adm.News 873, 877.

solve disputes on behalf of the franchisor. *See, e.g., Marathon Petroleum Co. v. Pendleton,* 689 F.Supp. 739, 742 (N.D.Ohio 1988) (citing, *Amoco Oil Co. v. D.Z. Enterprises Inc.,* 607 F.Supp. 595, 602 (E.D.N.Y.1985) (Court accepts jurisdiction and refuse to interpret the PMPA in a manner that would shield a franchisee from the consequences of his own acts); *Shell Oil Co. v. Kozub,* 574 F.Supp. 114, 116 (N.D.Ohio 1983) (summary judgment granted for franchisor where PMPA acknowledges the right of the franchisor to terminate franchises under certain circumstances); *Crown Central Petroleum Corp. v. Waldman,* 515 F.Supp. 477 (M.D.Pa. 1981) (declaratory judgment entered in favor of franchisor, for termination of franchise relationship, state law preempted). *Texaco Refining and Marketing Inc. v. Davis,* 835 F.Supp. 1223 (D.Or.1993), deals squarely with the issue of subject matter jurisdiction. It cites a plethora of cases which establish that federal question jurisdiction exists for franchisors under the PMPA (franchisor entitled to preliminary injunction and ultimately summary judgment where franchisee violated provisions of PMPA). At the hearing, the Plaintiffs asserted that notwithstanding the Defendants arguments on federal question jurisdiction they have satisfied the requirements for jurisdiction under diversity of citizenship, 28 U.S.C. § 1332. In seeking declaratory or injunctive relief, amount in controversy for federal diversity jurisdiction purposes is measured by the value of the object of litigation. *Occidental Chemical Corp. v. Bullard,* 995 F.2d 1046 (11th Cir. 1993). The Court finds that Plaintiff's complaint sufficiently alleges diversity of citizenship and the amount in controversy meets the jurisdictional requirement. The court further finds that franchisor can maintain this action under PMPA.

### *Motion to Stay/Abate Proceedings*

The Court next addresses Defendant's Motion to Stay Proceedings (Dkt–11), pending the outcome of a parallel criminal case. Altina Associates, Inc. and P.J. & A.R. Altman, Inc. are closely held corporations, solely owned by Allen Altman and Peter Altman. Defendants seek to stay or abate this action to protect the owners Fifth Amendment right against self-incrimination in the state court criminal proceeding. The Defendants acknowledge, that as corporate parties to the above civil proceedings, they have no Fifth Amendment privilege against self-incrimination.

 The Constitution does not require a stay of civil proceedings pending the outcome of related criminal proceedings. However, a court may exercise its inherent discretionary authority to stay cases to control its docket and in the interests of justice and efficiency. *See, Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936). This Circuit has established that the Fifth Amendment does not prohibit adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. *United States v. A. Single Family Residence & Real Property,* 803 F.2d 625, 629 n. 4 (11th Cir.1986); *Baxter v. Palmigiano,* 425 U.S. 308, 317–18, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976). Forcing an individual to risk non-criminal disadvantage by remaining silent for fear of self incrimination in a parallel criminal proceeding does not rise to the level of an unconstitutional infringement. *Baxter,* 425 U.S. at 318, 96 S.Ct. at 1557; *U.S. v. White,* 589 F.2d 1283, 1287 (5th Cir.1979). Defendants may exercise their Fifth Amendment rights by not presenting evidence which would implicate them in their criminal proceedings. *Compare, Securities & Exchange Comm'n v. Rehtorik,* 755 F.Supp. 1018, 1020 (S.D.Fla.1990).

 There is, however, a recognized exception to this general rule: the Fifth Amendment is violated when a person, who is a defendant in both a civil and a criminal case, is forced to choose between waiving his privilege against self-incrimination or losing the civil case in [summary proceedings]. *Pervis v. State Farm Fire & Casualty Co.,* 901 F.2d 944 (11th Cir.), *cert. denied,* 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990), *cited in, United States v. Premises Located at Route 13,* 946 F.2d 749 (11th Cir.1991). To trigger this exception, the invocation of the privilege must result in automatic summary judgment [summary disposi-

tion of the case]; must result in an adverse judgment not merely the loss of "his most effective defense." *Pervis,* 901 F.2d at 946–7; *U.S. v. Premises,* 946 F.2d at 756. It does not appear from the record that the Defendant would be subject to summary disposition of this cause at this early juncture.

### Preliminary Injunction

■■■ Plaintiffs assert that in obtaining a preliminary injunction, once they have met the requirements as set forth in the PMPA, the Court should apply a lesser standard. "Although it is easier for a franchisee to obtain a preliminary injunction under [§ 2805], than in the usual case, the PMPA contains no comparable provisions which lessen the burden on franchisors." *Nassau Blvd. Shell Svc. Station, Inc. v. Shell Oil Company,* 875 F.2d 359, 364 (2d Cir.1989). The Plaintiff, therefore, must meet the traditional requirements for a preliminary injunction. The requirements of a preliminary injunction are well-established. The movant must demonstrate: (1) a substantial threat that he will suffer irreparable harm if an injunction is not issued; (2) a substantial likelihood that he will prevail on the merits of the claim; (3) that the threatened injury to the plaintiff outweighs any injury an injunction will cause the opponent; and (4) that granting the injunction is not against the public interest. *Cheffer v. McGregor,* 6 F.3d 705, 709–710 (11th Cir.1993); *Graham v. Schweiker,* 545 F.Supp. 625, 627 (S.D.Fla. 1982); Fed.R.Civ.P. 65. The Plaintiffs have satisfied the requirements for a preliminary injunction in this case.

### Likelihood of Success on the Merits

■■■ Title I of the PMPA regulates the relationship between the franchisor and the franchisee in the gasoline industry. Under the PMPA, a franchisor is precluded from terminating a franchisee unless it satisfies two requirements of section 2802, which provide in relevant part:

(b)(1) Any franchisor may terminate any franchise ... if—

(A) the notification requirements of section 2804 of this title are met; and

(B) such termination is based on a ground described in Section 2802(b)(2)

(b)(2) For the purposes of this subsection, the following are grounds for termination of a franchise ...

(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise is reasonable ...

### Definitions

(c) [T]he term "an event which is relevant to the franchise relations and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as—

(1) fraud of criminal misconduct by the franchisee relevant to the operation of the marketing premises;

(11) knowing failure of the franchisee to comply with Federal, State, or local laws or regulations relevant to the operation of the marketing premises.

Defendants acknowledge that they have received timely notice as required by Section 2804. Defendants do not refute the charges of failure to pay tax obligations to the State of Florida, and criminal charges pending in association with the same. Defendants have in no way challenged Plaintiff's substantive grounds for seeking relief in this cause. This Court finds that the failure to remit taxes in accordance with state law, to the Department of Revenue, and the subsequent issuance of tax warrants, is "an event" that would be sufficient for the franchisor to terminate the franchise relationship.

### Irreparable Harm

■■■ Plaintiffs claim irreparable harm, where they have followed the PMPA statutory requirements for termination of the franchise relationship, and Defendants continue in possession of the premises. In addition Plaintiffs, through affidavits, claim irreparable harm to Shell and its reputation from negative publicity associated with the criminal charges filed against the Defendants, to its trademark, competitive standing in the respective market, potential for closure of the station(s) by State of Florida, Depart-

ment of Revenue for unpaid gasoline taxes and loss of good will. The injuries identified by plaintiff are irreparable and immediate.

*Injury to Plaintiff Outweighs Injury to the Defendant Corporations*

In view of the Plaintiff's likelihood of success on the merits, Plaintiff's harm outweighs defendant's harm. While there is no doubt that the threatened harm to the Defendants is serious, the loss of two franchises, two factors tip the balance in favor of the Plaintiff in this case. Under section 2805(a) of the PMPA, the franchisee may maintain a civil action against the franchisor for failure to comply with the requirement of the PMPA, without regard to the amount in controversy within one year after the date of termination. Section 2805(b)(4) of the Act, further provides that a franchisee may seek equitable relief within a 90 day period after receiving the notice of termination. The Defendant's failure to seek such preliminary equitable relief was not exercised. Where Plaintiff's likelihood of success is great, and defendant's alternatives have not been utilized or are yet able to be exercised, the Defendants' potential harm is outweighed by Plaintiff's potential harm.

*Public Interest*

The granting of the injunction removing Defendants from the premises and restoring possession to Plaintiff would not disserve the public interest. The reopening of a functioning service station by Plaintiff would remove the stigma associated with nonpayment of taxes and serve the public's interest.

It is hereby **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Stay/Abate Proceedings (Dkt–10) is hereby **DENIED.**

2. Plaintiff's Motion for Preliminary Injunction (Dkt–2) is **GRANTED.**

3. Defendant, Altina Associates, Inc., its officers, directors, agents, employees, servants and attorneys and those persons or entities in active concert or participation with them, who receive actual notice of this injunction are hereby **preliminarily enjoined** from operating the service station located at 26998 U.S. 19 North, Clearwater, Florida 33515.

4. Defendant, P.J. & A.R. Altman, Inc., its officers, directors, agents, employees, servants and attorneys and those persons or entities in active concert or participation with them, who receive actual notice of this injunction are hereby **preliminarily enjoined** from operating the service station located at 1001 East Tarpon Avenue, Tarpon Springs, Florida 34689.

5. Defendants shall vacate the station by 5:00 p.m., July 22 and restore the same to its original condition, ordinary wear and tear excepted, such period being reasonably necessary for defendant to vacate the station; including but not limited to removal of all personal property and personal equipment on the premises.

6. Defendants shall return to Shell, immediately upon its vacation of the premises, all of Shell's equipment, fixtures, and other property located on the premises.

7. This Injunction shall remain in effect during the pendency of this action, or until final determination of this action, or further order of court.

**DONE** and **ORDERED.**