**Ruby NNADI, Plaintiff–Appellee,**

v.

**Robert RICHTER, District Director, United States Customs Service, Defendant–Appellant.**

**No. 92–8225.**

United States Court of Appeals, Eleventh Circuit.

Nov. 4, 1992.

Jane Wilcox Swift, Asst. U.S. Atty., Atlanta, Ga., for defendant-appellant.

Steven P. Berne, Atlanta, Ga., for plaintiff-appellee.

Before KRAVITCH, Circuit Judge, CLARK, Senior Circuit Judge, and PITTMAN*, Senior District Judge.

KRAVITCH, Circuit Judge:

Appellant, Director of the United States Customs Service ("Customs Service"), appeals the district court's order compelling the Customs Service to return claimant/appellee's car, seized pursuant to 19 U.S.C. § 1595 as property used to aid the introduction of illegal drugs into the United States. Appellant contests the district court's findings that (1) the United States had insufficient cause to seize claimant's automobile, and (2) claimant's due process rights were violated when an unreasonable delay ensued between seizure and a post seizure hearing. We hold that the district court erred in ordering the government to return claimant's car because (1) the government did demonstrate sufficient probable cause to warrant seizure, and (2) there was no undue delay between seizure and hearing under the test defined in *United States v. $8850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

I.   Statement of Facts and Course of Proceedings

On December 30, 1991, the Customs Service seized appellee Ruby Nnadi's ("Nnadi") black Nissan Pulsar ("Pulsar") from the parking lot of an apartment complex in Austell, Georgia. The vehicle was seized pursuant to 19 U.S.C. § 1595a, which provides for forfeiture of property used to aid in introducing any item into the United

---

* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

States contrary to law.[1] Nnadi was present during the seizure and aware that the Customs Service was confiscating her car.

The Customs Service based its seizure on information obtained from Jestine Joyner ("Joyner") who had been convicted of attempting to smuggle 5.5 pounds of heroin into the United States from the Philippines. Joyner told Special Agent James R. Wiggins that on June 23 or 24, 1991, Nnadi had used the Pulsar to drive Joyner to the Atlanta airport to catch a flight to the Philippines. Nnadi knew that Joyner's mission entailed obtaining heroin and smuggling it back into the United States. Indeed, Nnadi anticipated splitting the profits from this endeavor with Joyner. In addition to Joyner's testimony, the government found (1) information in Joyner's possession linking Nnadi to the heroin venture, and (2) independent information linking Nnadi to a broader smuggling conspiracy.

Following the seizure, the government initiated administrative forfeiture proceedings against the Pulsar pursuant to 19 U.S.C. § 1607 which requires that notice of forfeiture be sent to any party having an interest in a seized article. Such notice was mailed on January 16, 1992, but was addressed to the wrong apartment number. The notice included an explanation of administrative forfeiture proceedings and information on how to challenge the forfeiture by filing a claim and a cost bond. Nnadi claims she never received this notice.

On February 10, 1992, Nnadi filed a complaint in the U.S. District Court for the Northern District of Georgia for return of the Pulsar. Simultaneously, she filed a motion for "Temporary Restraining Order, Preliminary Injunction, and Consolidation of Hearing with Trial on the Merits." Following a hearing on February 19, 1992, the district court ruled that the Pulsar had

been seized in violation of due process because (1) the vehicle was seized without probable cause, and (2) at the time of the district court's ruling there had not yet been a post-seizure hearing at which Nnadi could have challenged the seizure ("the Order"). Consequently, the district court ordered the defendant Customs Service to return the Pulsar and enjoined the defendant from re-seizing the vehicle "until and unless the plaintiff is given an opportunity to challenge the defendant's legal basis for forfeiture under 19 U.S.C. § 1595a and defendant has established probable cause for the seizure."

On March 4, the Customs Service filed a notice of appeal of the Order together with a motion for a stay pending disposition on appeal. The district court ordered a stay through April 10, 1992. On April 10, the government filed an emergency motion with this court for stay pending appeal. This court granted the stay.

On March 6, Nnadi finally addressed the administrative forfeiture proceeding by filing a Claim and Declaration in Support of Request for Waiver of Bond. In late April 1992, the Customs Service, pursuant to 19 U.S.C. § 1603, asked the United States attorney to institute a judicial action against the Pulsar. In response, the United States attorney filed a complaint for forfeiture with the U.S. District Court for the Northern District of Georgia claiming that the United States had sufficient probable cause to obtain forfeiture under 21 U.S.C. § 881(a)(4) and 19 U.S.C. § 1595a.[2] This action is still pending before the district court.

## II. Discussion

The district court erred on several grounds when it ordered the defendant to

---

**1.** Section 1595a provides for forfeiture of: every vessel, vehicle, animal, aircraft or other thing used in, to aid in, or to facilitate, by obtaining information or in any other way, the importation, bringing in, unloading, landing, removal, concealing, harboring, or subsequent transportation of any article which is being or has been introduced, or attempted to be introduced, into the United States contrary to law.

**2.** Section 881(a) provides for forfeiture of all: aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances obtained in violation of the drug laws].

return the Pulsar to Nnadi. First, the court erroneously determined that the government did not have probable cause to seize the Pulsar. Second, it incorrectly applied the Supreme Court's test for determining the reasonableness of a delay between seizure of a forfeitable vehicle and a final determination concerning whether the seized vehicle should be returned to the owner. Third, the court failed to apply the traditional four-prong test for determining when a preliminary injunction should be granted.

### A. *Probable Cause*

The United States bears the same burden of proving probable cause in civil forfeiture actions brought under the customs laws as it does in civil forfeiture actions brought under the provisions of 21 U.S.C. § 881. 19 U.S.C. § 1615. Therefore, case law developed in cases under section 881, providing for forfeiture of property used to facilitate drug trafficking, applies to forfeitures under 19 U.S.C. § 1595a as well. In both circumstances, the United States must demonstrate that it had probable cause to seize the property. 19 U.S.C. § 1615. Section 1615, entitled "Burden of proof in forfeiture proceedings" provides that:

> In *all* suits or actions [other than those involving fraud, gross negligence or negligence] brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage ... *probable cause shall be first shown for the institution of such suit or action, to be judged by the court.*

*Id.* (emphasis added). *See also United States v. One 1975 Ford Pickup Truck, Etc.*, 558 F.2d 755 (5th Cir.1977) (discussing forfeiture under 19 U.S.C. § 1595a); *United States v. One 1969 Buick*, 493 F.2d 553 (5th Cir.1974); *United States v. Four Million, Two Hundred Fifty–Five Thousand Dollars*, 762 F.2d 895, 904 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).

■ Probable cause exists when the United States has reasonable grounds to believe that there is a substantial connection between the property charged and specific transactions involving illicit drugs. *United States v. $41,305 in Currency & Traveler's Checks*, 802 F.2d 1339, 1343 (11th Cir.1986). Although this connection need only be indirect, *United States v. Rivera*, 884 F.2d 544, 546 (11th Cir.1989), *cert. denied*, 494 U.S. 1018, 110 S.Ct. 1322, 108 L.Ed.2d 497 (1990), a car is considered directly involved when it is used to transport an individual to the place where a drug transaction takes place even though it is not used to transport money or drugs. *United States v. One 1979 Porsche Coupe*, 709 F.2d 1424, 1427 (11th Cir.1983); *United States v. One 1977 Cadillac Coupe De-Ville*, 644 F.2d 500, 503 (5th Cir.1981). In *One 1979 Porsche*, the court found that the vehicle was directly involved because it was used to transport an individual to and from a hotel where drug negotiations occurred, even though there was no evidence that the vehicle was used to transport any money. *Id.* In this case, there was not only evidence that the car was used to transport Joyner to the airport, but there was additional evidence that the Pulsar transported the money that was used to purchase drugs in the Philippines and the suitcase that was used to transport the drugs into the United States.

■ Hearsay statements are admissible to support the existence of probable cause. *United States v. One Parcel of Real Estate*, 963 F.2d 1496, 1501 (11th Cir. 1992); *United States v. Single Family Residence*, 803 F.2d 625, 629 n. 2 (11th Cir.1986). In particular, a law-enforcement officer may rely upon information received second-hand from other law-enforcement officers to demonstrate the existence of probable cause. *United States v. Kirk*, 781 F.2d 1498, 1504–05 (11th Cir.1986). Here, the government recounted several such admissible statements made by Joyner to a United States attorney and a Customs Service special agent. Apparently, Joyner told these officials that Nnadi proposed the smuggling venture, gave Joyner $4,000 in cash, escorted her to buy an airline ticket, and gave her detailed instructions concerning what to do in the Philip-

pines and on her return trip. Joyner also stated that Nnadi supplied Joyner with a black suitcase to be used for transporting the drugs back into the United States and drove Joyner to the airport in Nnadi's car. Later a different Customs Service special agent learned from Joyner that Nnadi's car was a little black Nissan.

These statements alone amounted to probable cause because they provided a "reasonable ground for a belief of guilt, supported by less than prima facie proof but more than mere suspicion" that the Pulsar "was used to facilitate the transportation, concealment, or possession" of illegal drugs. *One 1979 Porsche,* 709 F.2d at 1426; *United States v. One 1975 Ford Pickup Truck, Etc.,* 558 F.2d 755, 756 (5th Cir.1977); *$41,305 in Currency,* 802 F.2d at 1343 (The government's burden in proving probable cause is less than preponderance of the evidence). The government, however, had even more evidence to justify its seizure. Immediately after Customs Service agents arrested Joyner, they found a piece of paper on her bearing the name Nwandi, one of Nnadi's aliases. They also found a phone number which eventually was linked to Nnadi. Later, the government monitored a call by an arrested drug dealer to a telephone located at an apartment leased to Mercy Ruby Nnadi, who had shown a driver's license issued in the name of Ruby Nkechi Nnadi as identification for the lease. During this monitored call, the parties discussed the sale of heroin. Finally, in November, 1991, during a search of Nnadi's apartment in a matter unrelated to the Joyner/Philippines venture, police found a variety of relevant evidence including two-way radios, receipts from international flights, banking deposit and withdrawal slips for substantial sums of money, and clear title to a 1988 Pulsar.

The above information proves that the government had probable cause to believe that a substantial connection existed between the Pulsar and the heroin that Joyner had attempted to smuggle into the United States. *$41,305 in Currency,* 802 F.2d at 1343. Hence, the government was justified in seizing the Pulsar prior to the institution of a forfeiture hearing on the merits of the issue.

### B. *The Four–Prong Test for Unreasonable Delay*

■ The Supreme Court has set forth a four-part test for determining whether an unreasonable delay has transpired between seizure of forfeitable property and a final hearing concerning the ultimate disposition of the property seized. *United States v. $8,850 in United States Currency,* 461 U.S. 555, 563–69, 103 S.Ct. 2005, 2012–15, 76 L.Ed.2d 143 (1983); *United States v. Von Neumann,* 474 U.S. 242, 251, 106 S.Ct. 610, 615, 88 L.Ed.2d 587 (1986); *United States v. Premises Located at Route 13,* 946 F.2d 749 (11th Cir.1991). Courts must balance the following factors: (1) the length of delay; (2) the reason for the delay; (3) the claimant's assertion of her right; and (4) any prejudice suffered by the claimant. *Id.* Nnadi has been unable to show that these four factors weigh in favor of premature return of the Pulsar.

#### 1. Unreasonableness of Delay and Reasons for Delay

■ The district court held that an undue delay had transpired between the government's seizure of the Pulsar and a hearing to determine the ultimate disposition of the seized property. The court's ruling was based on the forty days that had elapsed between the date the Pulsar was seized and the date the court addressed Nnadi's claim. The court's rulings ignored (1) the government's diligence in abiding by the procedures relating to forfeiture and subsequent judicial hearings set forth in 19 U.S.C. §§ 1603, 1604 and 1607 and the fact that a prompt hearing would have ensued if Nnadi had filed a claim with the Customs Service contesting the government's seizure and (2) the relatively short delay which forty days represents under the circumstances.

The customs statutes oblige the government to send written notice to any party having an interest in a seized article as long as applicable procedures explaining how to contest the seizure. 19 U.S.C.

§ 1607. Under section 1603(b), the Customs Service must "report promptly" any seizure to the United States attorney whenever legal proceedings are necessary. 19 U.S.C. § 1603(b).[3] Such proceedings would be necessary whenever an individual contests a Customs Service seizure. Under section 1604, the United States attorney to whom the matter has been referred is obligated "forthwith to cause the proper proceedings to be commenced and prosecuted, *without delay*" before the appropriate district court. 19 U.S.C. § 1604 (emphasis added).

In this case, the Customs Service sent Nnadi the mandated written notice along with an explanation of how to challenge the forfeiture by filing a claim and a cost bond. Apparently, the notice was addressed to the wrong apartment number and Nnadi claims she never received it. Nevertheless, the government has proffered signed affidavits indicating that Nnadi and her lawyer were not only aware of the forfeiture (Nnadi witnessed the seizure), but that Nnadi's lawyer actually contacted the Customs Service office on January 13, 1992 and January 16, 1992, concerning the forfeiture.[4]

In this case, the delay between the forfeiture and a post-seizure hearing was justified by the government's involvement with the active administrative forfeiture proceedings involving the Pulsar. *$8850*, 461 U.S. at 567, 103 S.Ct. at 2014. The government did not cause an "undue delay" between seizure and hearing because it was awaiting a filing by Nnadi in the administrative proceeding which Nnadi knew existed. Had Nnadi filed the claim, which she and her lawyer must have known was required of her, the government would have been obligated, in return, to initiate judicial proceedings "without delay". 19 U.S.C. § 1603 and 1604.[5] In fact, once Nnadi finally did make the appropriate filing (on March 6, 1992, two days after filing this appeal), the government did take appropriate and prompt steps to obtain a hearing. On May 2, a complaint for forfeiture was filed in district court by the United States attorney.

■ The district court also stated that an unreasonable delay of six months separated commission of the alleged drug related conduct (driving Joyner to the airport) and the seizure. This determination by the district court misses the essence of the concept of unreasonable delay in forfeiture cases. Due process is violated when a claimant is deprived of her property for an unreasonable amount of time prior to a hearing on the merits, *$8850, supra*, not when there is a delay which postpones the seizure of the property.

■ In addition, the period between the acquisition of probable cause information and seizure is far from unreasonable. Although the Joyner importation incident occurred in late June 1991, the government

---

**3.** Section 1603(b) provides:

> Whenever a seizure of merchandise for violation of the customs laws is made ... and legal proceedings by the United States attorney in connection with such seizure ... [is] required, it shall be the duty of the appropriate customs officer to report promptly such seizure ... to the United States attorney for the district in which ... such seizure was made....

**4.** In any case, at the time Nnadi filed her complaint *in district court*, she had only been subject to forty days of seizure. Under relevant case law, much longer times than this have been held to be not excessive. In *$8850*, the Court held that an eighteen month gap between seizure and a civil forfeiture hearing was not excessive. *Id.* 461 U.S. at 569, 103 S.Ct. at 2015. Similarly, an eleven-month delay was upheld by the Eleventh Circuit in *Route 13*, 946 F.2d at 755. Therefore, even if she had no knowledge of the forfeiture hearing at the time she filed the complaint underlying this appeal, it is far from clear that she had experienced an "undue delay" warranting return of the Pulsar.

**5.** The fact that Nnadi and her lawyer must have known that the government was awaiting a filing of an administrative claim is bolstered by (1) her lawyer's phone calls to the customs office concerning the seizure and (2) the actual filing of such claim on March 6. Nnadi states in her Response to [the Government's] Motion to Supplement Record on Appeal that she "wanted to have the claim handled judicially, rather than through administrative forfeiture proceedings" but that she was filing under protest to guard against a possible procedural bar from a failure to file by a particular date. Clearly, Nnadi knew of the section 1603 and 1604 procedure but preferred to create her own timing, remedy and forum.

did not learn of Nnadi's involvement until December 12, 1991, less than three weeks prior to seizure. Thus, this information did not reach the appropriate special agent until December 19, eleven days prior to seizure. This minor delay is not unreasonable because "[b]oth the Government and the claimant have an interest in a rule that allows the Government some time to investigate." *$8850*, 461 U.S. at 565, 103 S.Ct. at 2013.

### 2. Nnadi's Assertion of Her Rights

The third factor in the *$8850* balancing test requires that claimant show that she diligently asserted her rights to a prompt post-seizure hearing. Nnadi has made no such showing, and in fact has shown that she willfully avoided the appropriate channels. If Nnadi had filed the appropriate claim with the Customs Service, the customs officer would have been obligated under section 1603(b) to refer the matter to the United States attorney. Section 1604 then obligates the United States attorney to "cause the proper proceedings to be commenced and prosecuted" in the appropriate district court. 19 U.S.C. § 1604. In addition, a claimant may speed up civil forfeiture proceedings by (1) filing an equitable claim seeking an order compelling the filing of the forfeiture action or return of the seized property, or (2) requesting that the Customs Service refer the matter to the United States attorney. *$8850*, 461 U.S. at 567, 103 S.Ct. at 2014. Nnadi and her lawyer had actual knowledge of a seizure by the Customs Service but failed to protest the seizure through any of the above mentioned channels. Not until March 6, 1992, two days after the appeal to this court, did she file, for the first time, a claim in the administrative forfeiture action which led, pursuant to sections 1603 and 1604 to an action being filed in district court on May 2. Consequently, it is clear that any significant delay has resulted from Nnadi's failure to exercise her rights in a timely fashion rather than from the government's failure to pursue prompt settlement of Nnadi's claims.

### 3. Prejudice to Defendant

Finally, a delay may be unreasonable if the defendant has been overly prejudiced by the delay between seizure and hearings. "The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *United States v. $8850*, 461 U.S. at 567, 103 S.Ct. at 2014; *Von Neumann*, 474 U.S. at 249, 106 S.Ct. at 615. The district court states in its order that the "defendant has offered no evidence that plaintiff can pay the requested bond." It is the claimant, however, who bears the burden of proving prejudice; it is not the defendant's responsibility to prove that Nnadi suffered no prejudice. Nnadi, like the claimant in *$8850*, has offered no evidence that she has been so harmed. *$8850*, 461 U.S. at 567, 103 S.Ct. at 2014. Nnadi has not shown that she is unable to post a cost bond, in the amount of 10% of the value of the seized car.

### 4. Balance of *Von Neumann* Factors

The *Von Neumann* factors weigh heavily in favor of a finding that no unreasonable delay transpired between seizure and post-seizure hearings and that the district court erred when it held otherwise. Nnadi was aware of the forfeiture by customs agents, as was her lawyer, and chose to initiate this action rather than file a claim through the correct channel. In addition, even if she had been unaware of the administrative proceeding when she filed this action on February 10, 1992, she certainly became aware of such when the government's responded to her complaint on February 18.[6] At that time, a mere forty

---

**6.** The government's response to claimant's Motion for Temporary Restraining Order, Preliminary Injunction and Consolidation of Hearing with Trial on the Merits states, in part:

On December 31, 1991, a Seizure Report prepared under the supervision of Special Agent

Wiggins was approved by his supervisor and transmitted to the District Director of the U.S. Customs Service. Shortly thereafter, the Fines, Penalties and Forfeiture Officer in the District Director's Office received the Seizure Report and *instituted administrative forfeiture*

days after forfeiture, she could have exercised her rights to compel a speedy civil forfeiture action.

Nnadi ignored the two appropriate courses of actions and instead initiated this case for return of the Pulsar. She has been denied a timely post-seizure trial solely because she attempted to circumvent the prescribed procedure for dealing with seized property. Currently, there is an appropriate forfeiture proceeding pending before the district court in which she can vindicate her rights if she proves that she has been unjustly denied her property. Because Nnadi failed to avail herself of her rights and because of the relatively short time period involved, we hold that the district court erred when it concluded that Nnadi had been denied her due process rights by an "unreasonable" delay between seizure and hearing.

### C. Preliminary Injunction

■ The district court not only erred in its findings on the issues of probable cause and unreasonable delay, but it made a broader, procedural error by not applying the traditional test associated with the grant of a preliminary injunction. Case law required the district court to make four findings in favor of Nnadi before granting the injunction: (1) a substantial likelihood that Nnadi would succeed on the merits of a civil forfeiture hearing; (2) a substantial threat that she would suffer irreparable injury if the injunction were not granted; (3) the threatened injury to the Nnadi outweighs the harm an injunction may cause the government; and (4) a grant of preliminary injunction would not disserve the public interest. *West Point–Pepperell, Inc. v.*

*Donovan,* 689 F.2d 950, 956 (11th Cir.1982); *Canal Authority v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). Nnadi, as movant, bore the burden of proving each of these four factors. *Canal Authority,* 489 F.2d at 573; *United States v. Jefferson County,* 720 F.2d 1511, 1515 (11th Cir.1983).

■ We review a district court's grant of a preliminary injunction under an abuse of discretion standard. The court's discretion, however, is not unbridled. A court must exercise its discretion in light of the four prerequisites for the "extraordinary relief" of preliminary injunction. *West Point–Pepperell,* 689 F.2d at 956 (quoting *Canal Authority, supra*).

The district court failed to apply, or even mention, this four-part test before granting Nnadi's motion for preliminary injunction. We cannot credit the district court with an implicit application of the preliminary injunction test because the claimant clearly did not prove the four necessary components as required by *Canal Authority.* In particular, the discussion in parts II.A and II.B, *supra,* shows that Nnadi failed to demonstrate that she had a substantial likelihood of success on either of her claims: (1) that the government failed to prove probable cause, and (2) that an undue delay transpired between seizure and a post-seizure hearing on the merits.[7]

Nnadi bore the burden of proving all four preliminary injunction factors, *Canal Authority, supra.* Consequently, we need not discuss whether she has proven the other three factors. Because Nnadi failed to demonstrate a substantial likelihood that she would succeed on the merits, the district court abused its discretion in granting

---

proceedings under 19 U.S.C. § 1607 and 19 U.S.C. § 162.31.

**7.** At a hearing on the merits, the government would again bear the initial burden of proving probable cause. *United States v. One Parcel of Real Estate,* 963 F.2d 1496, 1500 (11th Cir.1992). If the government makes this showing, the burden would shift to Nnadi as claimant to show by a preponderance of credible evidence that there is a defense to the forfeiture action. *United States v. One 1980 Bertram 58' Motor Yacht,* 876 F.2d 884 (11th Cir.1989). If Nnadi fails to rebut the government's showing of probable cause,

this failure would be sufficient by itself to warrant permanent forfeiture. *United States v. $5,644,540.00 in United States Currency,* 799 F.2d 1357, 1362 (9th Cir.1986); *United States v. Little Al,* 712 F.2d 133, 136 (5th Cir.1983). So far, Nnadi has offered no evidence to rebut the government's showing of probable cause and has not indicated that any such evidence would be forthcoming at a subsequent civil forfeiture hearing. Therefore, Nnadi did not prove a substantial likelihood of success on the merits on the grounds that the government had lacked probable cause to seize her car.

Nnadi's preliminary injunction and in ordering the government to return her car.

## III. Conclusion

For the above reasons we REVERSE the district court and VACATE the order requiring the government to return the Pulsar pending an adequate post-seizure hearing.