UNITED STATES of America,
Plaintiff–Appellant,

v.

FIFTY–TWO THOUSAND AND EIGHT HUNDRED DOLLARS ($52,800.00) IN U.S. CURRENCY AND INTEREST, Defendant,

Diego Jose Ganuza and Mayling Ganuza, Claimants–Appellees.

No. 92–5178.

United States Court of Appeals,
Eleventh Circuit.

Oct. 4, 1994.

---

**1338**

Israel J. Encinosa, Miami, FL, for appel-lees.

Jeanne M. Mullenhoff, Asst. U.S. Atty., Miami, FL, for appellant.

Before COX and DUBINA, Circuit Judges, and CLARK, Senior Circuit Judge.

**CLARK, Senior Circuit Judge:**

This is a civil forfeiture action. At issue is $52,800 that the government contends is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(B) as proceeds traceable to transactions involving controlled substances. The government appeals the district court's grant of summary judgment in favor of claimants Diego Jose Ganuza and Mayling Ganuza. The district court concluded that the less than four month delay between the seizure of the money and the initiation of forfeiture proceedings violated claimants' constitutional right to due process of law. Specifically, the district court concluded that Diego Jose Ganuza's extradition to Canada rendered the otherwise brief delay "lengthy and prejudicial" [1] and, therefore, violative of claimants' due process rights. We find that any prejudice to claimants is attributable, not to the government's delay, but to claimants' dilatoriness in asserting their rights. Accordingly, we reverse.

## BACKGROUND

On August 25, 1989, agents of the Drug Enforcement Administration ("DEA") and the Bureau of Alcohol, Tobacco and Firearms arrested Diego Jose Ganuza at his residence in Miami, Florida, pursuant to an extradition arrest warrant. Ganuza had been criminally charged in Canada with conspiracy to import cocaine into that country. Contemporaneously with the arrest, the agents searched Diego Jose Ganuza's residence and discovered $52,800 in United States currency, cocaine residue, drug paraphernalia, and firearms. DEA agents seized the $52,800 in currency as proceeds traceable to narcotics transactions.

Proceeds traceable to narcotics transactions are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), and pursuant to 18 U.S.C. § 981(a)(1)(B), if the narcotics transactions also violate the law of a foreign nation. Both of these statutes incorporate the seizure, forfeiture, and related provisions of the customs laws, 19 U.S.C. §§ 1602–1618.[2] Section 1607 provides that the agency seizing the property

---

**1.** R1–64–5.

**2.** 18 U.S.C. § 981(d); 21 U.S.C. § 881(d).

must send written notice to each party who appears to have an interest therein. The DEA sent the requisite notice to claimants on October 31, 1989, and claimants received the notice on November 3, 1989. A forfeiture may proceed administratively unless and until the claimant files a claim stating his interest in the property and a bond to cover the costs of judicial proceedings.[3] Claimants in this case filed a claim and cost bond on November 24, 1989. The record does not indicate that claimants undertook any action to assert their ownership rights prior to this date. Upon the filing of a claim and cost bond, the agency seizing the property is obligated "to report promptly" to the United States attorney.[4] The United States attorney is then obligated "immediately to inquire into the facts" of the case and, if it appears probable that forfeiture is appropriate, "forthwith to cause the proper proceedings to be commenced and prosecuted, without delay...."[5] When claimants in this case filed their claim and cost bond on November 24, 1989, the DEA referred the matter to the United States Attorney's Office. That office initiated this proceeding by filing a Complaint for Forfeiture with the district court on December 15, 1989.

Between December 15, 1989, and May 1990, claimants filed an answer to the government's complaint and served interrogatories and requests for production of documents on the government. Claimants also filed a motion with the district court requesting that Diego Jose Ganuza's extradition to Canada be stayed pending the trial of the forfeiture action. Claimants did not, however, undertake any action to expedite the judicial forfeiture proceeding. The district court denied the motion to stay the extradition, but Diego Jose Ganuza was successful, in separate proceedings, in delaying the extradition

for some time. He was eventually extradited to Canada on May 17, 1990.

After Diego Jose Ganuza's extradition, claimants filed several motions for summary judgment, one of which alleged that they were entitled to judgment as a matter of law because the government had violated their due process rights by waiting nearly four months after the seizure of the currency to initiate judicial forfeiture proceedings. The magistrate judge issued a report recommending that the motion be granted. Applying the four-factor balancing test of *Barker v. Wingo*,[6] the magistrate judge concluded that "what under ordinary circumstances would have been a brief delay, under these circumstances involving forfeiture of property owned by one facing immediate extradition, becomes a lengthy and prejudicial delay." Over the government's objections, the district court adopted the magistrate judge's report and recommendation and entered summary judgment in favor of claimants. The government appealed.

## DISCUSSION

The Supreme Court has held that the *Barker v. Wingo* balancing test applicable to speedy trial claims provides the relevant framework for determining the reasonableness of a delay in filing a forfeiture action.[7] Thus, in determining whether a delay in instituting forfeiture proceedings violates due process, a court must weigh four factors: the length of the delay, the reason for the delay, the claimant's assertion of his right, and the prejudice to the claimant.[8] None of the four factors is a necessary or sufficient condition for finding a violation of due process. "Rather, these elements are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case."[9]

**3.** 19 U.S.C. §§ 1608 and 1609; 21 C.F.R. §§ 1316.76 and 1316.77.

**4.** 19 U.S.C. §§ 1603(b) and 1608; 21 C.F.R. § 1316.78.

**5.** 19 U.S.C. § 1604.

**6.** 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**7.** *United States v. $8,850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

**8.** *Id.* at 564, 103 S.Ct. at 2012.

**9.** *Id.* (footnote omitted).

**1340**

■ In applying the four *Barker* factors to this case, the district court recognized that the roughly three and one-half month delay between the seizure and the initiation of these proceedings would be considered a brief delay under ordinary circumstances. As to the second factor, the reason for the delay, the district court found that the government had failed to justify the delay; however, claimants did not offer any evidence of and the district court did not find any bad faith on the part of the government. As to the third factor, the district court recognized that claimants failed to take any action to assert their rights. It is upon the fourth factor, prejudice, that the district court rested its decision. Relying on Diego Jose Ganuza's extradition, the district court concluded that "[t]he balance of this factor weighs heavily in the claimants' favor." [10] While we agree with the district court that the extradition prejudiced claimants, we find that, on the facts of this case, this prejudice is insufficient to support a decision for claimants. We find that the requirements of due process were satisfied because the delay between the seizure and the initiation of these proceedings was relatively short, there is no evidence of bad faith on the part of the government, and, most importantly, claimants could have avoided the prejudice by asserting their rights.

There are several means by which a claimant may assert his rights to a prompt post-seizure hearing and, thereby, "trigger rapid filing of a forfeiture action if he desires it." [11] First, a claimant may file a claim and cost bond, thus obligating the agency "to report promptly" to the United States attorney, and obligating the United States attorney to "immediately" investigate the case and initiate judicial proceedings "without delay." In this case, claimants waited three months before filing their claim and cost bond, which accounts for most of the delay about which they now complain. Second, a claimant may file an equitable action to compel the filing of a forfeiture action or for return of the seized property. [12] Claimants in this case filed no such action. Finally, a claimant may informally request that the agency refer the matter to the United States attorney. [13] There is no evidence in the record before us that claimants made such a request. There simply is no indication that claimants desired a speedy filing of the judicial forfeiture proceeding.

Claimants were also dilatory in asserting their rights after the judicial forfeiture proceeding was initiated. Claimants answered the complaint and engaged in discovery, but took absolutely no action to expedite the trial of the case. Diego Jose Ganuza knew that his extradition was imminent, as he filed a motion with the district court to stay the extradition. Nevertheless, he did not file, even in the alternative, a motion to expedite the case. Again, there is no indication that claimants desired a speedy resolution of this matter. Thus, the third *Barker* factor, claimants assertion of their rights, weighs heavily against claimants. [14]

Claimants argue that the delay about which they complain was due not to their failure to assert their rights, but to the government's procrastination in issuing the notice of seizure, which was mailed more than two months after the currency was seized. While a promptly issued notice of seizure may have forced claimants to file a claim and cost bond earlier, [15] nothing prevented claim-

---

10. R1–64–7–8.

11. *United States v. $8,850,* 461 U.S. at 569, 103 S.Ct. at 2014.

12. *Id.; Nnadi v. Richter,* 976 F.2d 682, 689 (11th Cir.1992); *Robinson v. United States,* 734 F.2d 735, 738 (11th Cir.1984).

13. *United States v. $8,850,* 461 U.S. at 569, 103 S.Ct. at 2014; *Nnadi,* 976 F.2d at 689.

14. *See United States v. Premises Located at Route 13,* 946 F.2d 749, 755 (11th Cir.1991) (claimants failure to assert their right to a judicial hearing weighed against finding of due process violation); *United States v. Bissell,* 866 F.2d 1343, 1353 (11th Cir.) (third factor weighed against claimants where "nothing in the record indicates that [claimants] desired an early hearing to contest the government's restraints"), *cert. denied,* 493 U.S. 876, 110 S.Ct. 213, 107 L.Ed.2d 166 (1989).

15. To avoid summary forfeiture of the property, a claimant must file a claim within 20 days of the notice. 19 U.S.C. § 1609; 21 C.F.R. § 1316.77.

ants from filing a claim and cost bond before issuance of the notice. The currency was seized contemporaneously with Diego Jose Ganuza's arrest; thus, claimants were certainly aware of the seizure. If claimants wished to resolve the forfeiture matter prior to Diego Jose Ganuza's extradition, they could have and should have made some effort to expedite the forfeiture proceeding.

This case is similar to our decision in *Nnadi v. Richter*. In that case, the Customs Service seized claimant Ruby Nnadi's car. Nnadi was present during the seizure. The Customs Service mailed Nnadi the requisite notice, but it was sent to an erroneous address, and Nnadi never received it. Approximately one and one-half months after the seizure, Nnadi filed a complaint in district court seeking return of the car. The district court ruled in Nnadi's favor, holding that the government's delay following the seizure violated Nnadi's due process rights. This court reversed. Noting that Nnadi had not filed a claim and cost bond with the Customs Service or otherwise sought to speed up the forfeiture proceedings, we concluded: "[I]t is clear that any significant delay has resulted from Nnadi's failure to exercise her rights in a timely fashion rather than from the government's failure to pursue prompt settlement of Nnadi's claims."[16] The same can be said of this case; any significant delay resulted from claimants' failure to promptly file a claim and cost bond or otherwise assert their rights.

We conclude that the district court erred in holding as a matter of law that the four *Barker* factors weighed in favor of claimants. While we acknowledge that claimants are prejudiced by Diego Jose Ganuza's extradition, they could have prevented the prejudice by timely asserting their rights. We see nothing in the record to indicate that claimants desired a resolution of the forfeiture proceedings prior to the extradition.

## CONCLUSION

For the reasons explained above, the district court's order granting summary judgment for claimants-appellees is REVERSED and the case is REMANDED for further proceedings.

